**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SPACECON SPECIALTY CONTRACTORS, LLC,**<br><br>         Plaintiff,<br><br>         v.<br><br>**RICHARD BENSINGER,**<br><br>         Defendant. | Case No. 1:10-mc-00384<br><br>Judge: Ricardo M. Urbina |

**PLAINTIFF SPACECON SPECIALTY CONTRACTORS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS FOR VEXATIOUS AND ABUSIVE DISCOVERY CONDUCT**

Plaintiff Spacecon Specialty Contractors, LLC ("Spacecon") respectfully submits this Memorandum of Law in Support of Its Motion for Attorneys' Fees and Costs for Vexatious and Abusive Discovery Conduct ("Motion") against counsel for third-party Robert Clift ("Clift"), Martin Walter ("Walter") and Robert J. Henry of Blake & Uhlig, P.A., and Francis J. Martorana of O'Donoghue & O'Donoghue, LLP (collectively, "Clift's Counsel"), for their unreasonable and vexatious conduct taken with respect to the filing of Clift's Motion to Quash the Deposition Subpoena/Subpoena Duces Tecum ("Motion to Quash").[1]

### I. INTRODUCTION & SUMMARY OF ARGUMENT

This Motion is necessary to recover costs and attorneys' fees that—because of Clift's

---

[1] The case underlying this miscellaneous action is *Spacecon Specialty Contractors, LLC v. Bensinger*, Civil Action No. 1:09-cv-02080-REB-KLM, which is now pending in the U.S. District Court for the District of Colorado. In the case, Spacecon alleges that defendant Richard Bensinger ("Bensinger") produced and published a documentary film entitled "Looking the Other Way: Benefiting from Misery" ("Film"), in which he falsely accuses Spacecon of crimes, including human trafficking and tax fraud. Spacecon has asserted one claim against Bensinger for defamation *per se*. Clift assisted Bensinger in making the Film and is a material witness.

Counsel's egregious discovery conduct—Spacecon needlessly incurred in connection with the aborted deposition of Clift in Washington, D.C. in June 2010. After attempting for many weeks to locate, communicate with, and serve a material witness in the underlying action with a subpoena *duces tecum*, Spacecon was finally able to serve Clift and arrange to take his deposition. The day before the anticipated deposition—and hours before his scheduled flight from Denver to Washington, D.C.—counsel for Spacecon, Christopher Leh ("Leh"), learned that Clift was represented by counsel who stated that he expected to file a motion to quash. To avoid cancelling this important and time-sensitive deposition, Leh proposed a reasonable agreement that would give Clift and Clift's Counsel additional time to prepare for his deposition and respond to the subpoena *duces tecum*, and Leh postponed his flight until later in the day (3:30 p.m. MDT) to give them time to consider the offer and respond. Leh also gave clear communications that, unless he heard otherwise, he intended to proceed with the deposition. . He provided the exact time of his flight to Washington, D.C., as well as information on how to contact him in advance of the flight.

Clift's Counsel chose to disregard Leh's communications. Instead, they signed and filed the Motion to Quash at 2:35 p.m. MDT—<u>prior</u> to Leh's flight—but chose not to inform Leh of this fact until hours later. As a result, Leh needlessly boarded his flight and flew across the country. As a consequence, Spacecon unnecessarily incurred costs associated with Leh's travel, lodging, and a cancelled deposition, including fees for the videographer and court reporter.

Such egregious conduct is prohibited, and those who engage in it should be sanctioned by the Court. Title 28, Section 1927 of the U.S. Code ("Section 1927") provides this Court with authority to award attorneys' fees and costs against attorneys for their unreasonable and vexatious conduct. The Court also has inherent authority to sanction conduct that abuses the

judicial process. Accordingly, Spacecon respectfully requests that this Court require Clift's Counsel to pay Spacecon's attorneys' fees and costs associated with the aborted deposition of Clift in Washington, D.C.

## II. FACTUAL BACKGROUND[2]

1. Spacecon became aware of Clift and his critical role in making the Film during Bensinger's deposition in April 2010. Spacecon diligently sought to contact, locate, and serve a subpoena on Clift to depose him and seek discoverable documents from him. Those efforts included obtaining Clift's cell phone number from Bensinger (who had been in contact with Clift "over the last six months about this film"), calling Clift on multiple occasions to talk with him about setting up his deposition at a mutually convenient time, and leaving voice mail messages for Clift, which he never returned. (Leh Declaration ("Leh Decl.") ¶¶ 5-6, attached to the Motion as Exhibit 1; Transcript of Bensinger's Deposition 54:20-55:10; 59:16-60:20, attached as Exhibit 1-A.)

2. As a result of these efforts, Spacecon learned that Clift's mother lives in Washington, D.C. It engaged a private investigator to determine if Clift was staying there. The investigator confirmed that Clift was in fact staying at his mother's home. (Leh Decl. ¶ 7.)

3. In anticipation of serving Clift with a subpoena *duces tecum*, Leh contacted Clift to arrange a time to serve him with a subpoena and depose him, but Clift did not return any of the voice mail messages left for him. Leh also contacted Bensinger's counsel twice to set a time for Clift's deposition and suggested June 11, the date that the parties had set aside for the Washington, D.C. deposition of one of Spacecon's experts. Neither message to Bensinger's attorneys was returned. (Emails from Chris Leh to Jody Borrelli and Dan Shanley dated May 25,

---

[2] Many of the facts supporting this Motion also form the basis of Spacecon's Amended Response in Opposition to Robert Clift's Motion to Quash, which was filed on June 7, 2010.

3

2010 and June 2, 2010, Exhibit 1-B; Leh Decl. ¶ 8.)

    4.    Indeed, the only mention Bensinger's counsel ever made about scheduling Clift's deposition was to tell Spacecon that depositions of Clift and other third parties could not take place until after June 1, less than two weeks before the discovery cutoff. (Email from Dan Shanley to Larry Marquess dated May 7, 2010, Exhibit 1-C.)

    5.    Clift's evasiveness necessitated a weekend stakeout to effect service of a subpoena *duces tecum*. Spacecon finally located and served Clift on Sunday, June 6, 2010. (Affidavit of D. Michael Grossnickle dated June 9, 2010, Exhibit 1-D; Leh Decl. ¶ 10.) Facing a discovery deadline of June 14, Spacecon scheduled the deposition to occur in Washington, D.C., where Clift resides, on June 11. (Leh Decl. ¶ 10.)

    6.    After being served with the subpoena, Clift did not contact Leh. On June 8, 2010, however, Leh called Clift's cell phone again. He did not answer, so Leh again left a voice mail message, reminding him he had been served with the subpoena, that Leh would be coming to Washington, D.C. to take his deposition there on June 11, that he expected that Clift to attend that deposition, and that, if Clift chose not to attend the deposition, Spacecon would seek to compel him to attend and would seek attorneys' fees and costs. (Leh Decl. ¶ 12.)

    7.    On June 9, Jody Borrelli ("Borrelli"), one of Bensinger's attorneys, emailed Leh indicating that, "I believe [Clift] is in the process of obtaining counsel and may well be objecting to your subpoenas." (Email from Jody Borrelli to Chris Leh dated June 9, 2010, Exhibit 1-E.) At 6:30 p.m. that night, during a break in a deposition attended by Borrelli and Leh, Borrelli told Leh that she believed Clift was represented by Martin Walter ("Walter") of Blake & Uhlig, P.A. in Kansas City, KS. Walter is representing seven of the other non-party witnesses to this case and is familiar with and knowledgeable about the lawsuit. (Leh Decl. ¶¶ 14-15.)

4

8. Early the morning of June 10—the day before Clift's scheduled deposition—Walter emailed Leh and Leh's colleague, Larry Marquess. He stated that his firm had been retained to represent Clift, had engaged local counsel in Washington, D.C., which had not yet completed a conflict check, and expected to file a motion to quash. (Email from Martin Walter to Larry Marquess dated June 10, 2010, Exhibit 1-F.)

9. When Leh learned Clift was represented, he contacted Clift's counsel and Bensinger's counsel to remind them of the deposition, Spacecon's intention to take the deposition in Washington, and the conditions under which Spacecon would agree to reschedule the deposition if that were preferable. He also clearly indicated when he would be leaving Denver to travel to Washington, D.C. to take the deposition. Indeed, Leh put off the flight to give Walter and opposing counsel time to consider the situation and respond, and he contacted each of them, left each a message, and spoke with the assistants to each lawyer, provided his cell phone number and email address to the lawyers and their staff members requesting that they contact him immediately. (Email from Chris Leh to Dan Shanley, Jody Borrelli, Martin Walter dated June 10, 2010, Exhibit I-G; Leh Decl. ¶ 17.)

10. At the time Leh left his office to go to the airport for the later flight, neither of Clift's lawyers had provided any information whatsoever regarding their position concerning Leh's proposal. Nor had any of their staff members confirmed that they had filed a motion to quash with this Court. Had Clift's counsel informed Leh of the filing, he would not have boarded the flight, would have canceled the trip, and canceled the videographer and stenographer for the scheduled deposition. Because he had subpoenaed Clift and scheduled the deposition for the next morning, however, he had no choice but to fly to Washington, D.C. He checked his voice mail and email just before boarding his flight, but none of the lawyers or their staff members had

contacted him. He boarded his flight at 3:05 p.m. MDT / 4:05 p.m. CDT / 5:05 p.m. EDT. (Leh Decl. ¶ 18.)

11. When Leh deplaned in Washington at approximately 10 p.m. EDT and checked his email, he found an email from a staff member of Clift's Kansas City counsel that had been sent after he had boarded the plane in Denver. To that email was attached a copy of Clift's Motion to Quash. He also saw and read a second email (sent shortly afterward) attaching copy of the Court's date-stamped original Motion showing that the Motion had been filed at <u>4:35 p.m. EDT/2:35 p.m MDT</u>. Robert J. Henry of Blake & Uhlig, P.A. in Kansas City and Francis J. Mantorana of O'Donoghue & O'Donoghue, LLP in Washington, D.C. signed and filed the motion. Clift's Kansas City counsel emailed these emails to Leh hours after the filing of the Motion and hours after he had left Denver bound for Washington. (Leh Decl. ¶ 19; email from Lori Elrod to Chris Leh and others dated June 10, 2010, Exhibit 1-H.)

12. Therefore, despite clear communications by Leh with Clift's counsel and Bensinger's counsel about exactly when Leh was to leave Denver to fly to Washington, D.C, Clift's lawyers in Kansas City prepared and signed, and his co-counsel in Washington had finalized, signed and filed, the Motion with this Court <u>even before Spacecon's counsel had boarded his flight to Washington and knowingly chose not to take the simple step of informing Leh in time to avoid the expenses associated with flying to take the deposition the next morning</u>.

13. Further, this is not the first time Clift's lawyers have engaged in such discovery abuse <u>in this case</u>. As note above at paragraph 7, *supra*, Walter represents a number of non-parties who have been subpoenaed in this case. As in this case, Walter engaged in serious discovery misconduct—specifically, withholding documents and film footage related to Spacecon's damages claims, claims for injunctive relief, and the identification of witnesses—

6

which forced Spacecon to file a motion to enforce the subpoenas and for sanctions. (*See* Leh Decl. ¶ 20; Plaintiff's Motion to Enforce Subpoenas and Local Rule 37.1 Certification, Exhibit 1-I.)

### III. LEGAL ARGUMENT

A. **The Court Should Impose Sanctions Against Cliff's Counsel Under 28 U.S.C. § 1927.**

Section 1927 provides a statutory basis for the imposition of sanctions and attorneys' fees. It provides in pertinent part:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 is directed against attorneys who show "disregard for the orderly process of justice." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (citations omitted) (holding that bringing baseless litigation evidenced bad faith and, thus, attorneys' fees were proper). In other words, the district court must find that the offending attorney's actions were both "unreasonable" and "vexatious," which may be shown by "evidence of recklessness, bad faith, or improper motive must be present." *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998) (quoting *Travelers Ins. v. St. Jude Hosp. of Kenner, La.*, 38 F.3d 1414, 1417 (5th Cir. 1994)).

Here, the factual record demonstrates that Clift's Counsel had an improper motive and acted in bad faith in their attempt to prevent Spacecon from taking the deposition of a key witness who had avoided service of a subpoena for months. Clift's Counsel <u>knew</u> from numerous communications—through e-mail and voicemail messages—the following facts: (1) Clift's deposition was scheduled for June 11 in Washington, D.C.; (2) Leh would be taking the deposition and, because he lived in Denver, would need to travel to Washington, D.C. for it; (3)

Leh postponed his flight to enable the parties to work out a reasonable arrangement to satisfy all parties involved; (4) Leh intended to proceed with the deposition as scheduled if Clift would not agree to accommodate a possible postponement of the deposition; (5) Leh's rescheduled flight would leave at 3:30 p.m. MDT and that he would leave for the airport at 1:30 p.m. MDT; (6) Leh could be contacted up until the time he boarded the flight either by email or by calling his cell phone; and (7) Leh would be monitoring his voicemail and email prior to boarding the plane to ensure that there was no change in the deposition schedule. (*See* Factual Background, *supra*, at ¶¶ 9-12.) Clift's Counsel did not contact Leh prior to his boarding the flight to inform him that they would not agree to Leh's proposed arrangement and would in fact file the Motion to Quash, thereby enabling Spacecon to avoid the costs and inconvenience of its lawyer's traveling across the country for the deposition. Rather, Clift's Counsel chose to wait until after Leh left Denver to inform him of the filing. (*Id.*) Specifically, both Henry and Mantorana signed and filed the motion at 4:35 p.m. EDT/2:35 p.m. MDT—an hour <u>prior</u> to Leh's flight—without informing him that they had done so. In the end, they waited to do so until hours after Leh had left Denver bound for Washington. (*Id.*)

This evidence demonstrates that, despite clear communications by Leh with Clift's counsel and Bensinger's counsel about exactly when Leh was to leave Denver, Clift's Counsel filed the Motion to Quash with this Court but <u>knowingly chose not to take the simple step of informing Leh in time to avoid the expenses associated with traveling to take the deposition</u>. As a consequence, this Court should impose sanctions against Clift's Counsel pursuant to 28 U.S.C. § 1927. *See, e.g.*, *Robertson v. Cartinhour*, No. 09-01642 (ESH), 2010 U.S. Dist. LEXIS 48398, at *4-5 (D.D.C. May 17, 2010).

*Robertson* is especially instructive. There, the district court for the District of D.C.

8

awarded the defendant/counter-plaintiff attorneys' fees based on the plaintiff/counter-defendant counsel's conduct in discovery and motion practice. Specifically, the sanctioned attorney moved to quash documents he and his client had previously agreed to produce based on the meritless argument that the subpoena was "overly broad" because it sought documents from August 2004 to February 2010, rather than September 2004 to February 2010. *Id*. at *4. The attorney did not work with opposing counsel to narrow the subpoena or make any effort to avoid filing the motion to quash, thereby "necessitating a response by Cartinhour and escalating costs and expenses." *Id*. The court held that this conduct was "reckless and in bad faith" and, therefore, merited sanctions. *Id*. The court further held that the attorney's motion to reconsider the court's order allowing the defendant/counter-plaintiff to amend his complaint merited sanctions because he should have known that such a motion was unreasonable. *Id*. at *5; *see also, e.g.*, *Metro. Opera Ass'n v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 230 (S.D.N.Y. 2003) (awarding sanctions upon finding that "the Union counsel's failures to comply with their discovery obligations and their unreasonable obstruction and delay of discovery to be so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose" (internal quotation marks and citation omitted)). This case merits the same result.

**B.     The Court May Also Award Sanctions Pursuant to the Court's Inherent Authority To Sanction.**

As the U.S. Supreme Court has said, courts also have the inherent power "to manage their own affairs as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO,* 501 U.S. 32, 43 (1991). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id*. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-

9

31 (1962)); *see also Metro. Opera Ass'n*, 212 F.R.D. at 231 ("[N]ecessary to the Court's conducting judicial business in our adversary system is the inherent power to sanction those who deviate from the standards of good faith. Equally necessary to continuing to conduct judicial business is actually exercising that power and sanctioning counsel and parties who in bad faith fail to abide by the rules and fail to conduct themselves honestly."). "[I]nherent powers must be exercised with restraint and discretion," but "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45 (internal citations omitted). Appropriate sanctions include the assessment of attorneys' fees. *Id.* (citations omitted).

Here, in addition to awarding attorneys' fees and costs under Section 1927, Spacecon respectfully requests that the Court utilize its inherent power to sanction. Clift's Counsel should be subject to this power because they clearly abused the judicial process in allowing Spacecon to incur numerous costs despite knowing that no deposition would go forward on June 11. *See, e.g.*, *Metro. Opera Ass'n*, 212 F.R.D. at 231 (granting the motion for sanctions pursuant to the court's inherent power). Holding otherwise would "diminish the Court's authority and the adversary system and would serve as a license, encouraging similar behavior." *Id.*

## IV. <u>CONCLUSION</u>

Based on the unreasonable and vexatious conduct of Clift's Counsel, Spacecon respectfully requests that the Court grant its motion for sanctions and order Clift's Counsel to pay the attorneys' fees and costs associated with the aborted deposition.

Dated: July 15, 2010                              Respectfully submitted,

*/s/ Steven E. Kaplan*
Steven E. Kaplan (DC Bar No. 492408)
skaplan@littler.com
1150 17th Street, N.W.
Suite 900
Washington, D.C. 20036
(202) 842-3400 (Telephone)
(202) 842-0011 (Facsimile)

Counsel for Spacecon Specialty Contractors, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of July, 2010, a copy of the foregoing Plaintiff Spacecon Specialty Contractors, LLC's Memorandum of Law in Support of Motion for Attorneys' Fees and Costs for Vexatious and Abusive Discovery Conduct was served via the electronic case filing (CM/ECF) system and e-mail on counsel for Robert Clift as follows:

> Francis J. Martorana
> O'DONOGHUE & O'DONOGHUE, LLP
> 4748 Wisconsin Ave., N.W.
> Washington, D.C. 20016
> fmartorana@odonoghuelaw.com

I also certify that on this 15th day of July, 2010, a copy of the foregoing Plaintiff Spacecon Specialty Contractors, LLC's Memorandum of Law in Support of Motion for Attorneys' Fees and Costs for Vexatious and Abusive Discovery Conduct was served via e-mail on counsel for Richard Bensiger as follows:

> Richard Rosenblatt
> Richard Rosenblatt & Associates, LLC
> 8085 East Prentice Ave.
> Greenwood Village, CO 80111-2745
> RROSENBLATT@cwa-union.org

> Daniel M. Shanley
> Jodie Borrelli
> DECARLO, CONNOR & SHANLEY
> 533 S. Fremont Ave., 9th Floor
> Los Angeles, California 90071
> jborrelli@deconsel.com
> dshanley@deconsel.com

>> /s/ Steven E. Kaplan
>> Steven E. Kaplan

Firmwide:96269264.1 060035.1002